UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **STACIA BURRELL,**<br>     Plaintiff,<br><br>v.<br><br>**KILOLO KIJIKAZI,**<br>**Acting Commissioner**<br>**of the Social Security**<br>**Administration,**<br>     Defendant. | **Case No. 7:22-cv-482-CLM** |

## MEMORANDUM OPINION

Stacia Burrell seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Burrell's application in an opinion written by an Administrative Law Judge ("ALJ").

Burrell argues that the ALJ erred in finding the opinion of examining psychiatrist David W. Hodo not persuasive. The court agrees that it should remand this case for reconsideration of Dr. Hodo's opinion. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner.

**I.    STATEMENT OF THE CASE**

**A.    Burrell's Disability, as told to the ALJ**

Burrell was 34 years old at the time of her alleged disability onset date. (R. 50). Burrell graduated high school and received training in cosmetology. (R. 255). And Burrell had worked as a packer at a corndog manufacturer. (R. 256).

At the ALJ hearing, Burrell testified that she left her job as a packer because of heart palpitations and panic attacks. (R. 36). To treat these symptoms, Burrell goes to monthly counseling sessions and takes 50 milligrams of Zoloft each day. (*Id.*). According to Burrell, her panic attacks occur about once a week, last for around 5 to 10 minutes, and are often brought on by big crowds. (R. 37). Burrell also has crying spells during the daytime. (R. 41–42). And Burrell has trouble concentrating because she fears others and feels like someone will hurt her. (R. 39). Burrell also says that she feels useless. (R. 43).

Burrell lives with her aunt and two nieces. (R. 37). Though Burrell has a driver's license, she hadn't driven for the two months before the ALJ hearing because of fear being behind the wheel. (R. 38). And Burrell doesn't go grocery store shopping by herself. (R. 43). But Burrell does do some household chores like sweeping, dusting, making her bed, and performing her own personal care and grooming. (R. 39).

### B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |

| *Determine Residual Functional Capacity* | | |
|---|---|---|
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.     Burrell's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Burrell applied for disability insurance benefits, a period of disability, and SSI in August 2020, claiming that she could not work because of various ailments, including depression, anxiety, PTSD, panic attacks, heart issues, body pain, schizophrenia, and headaches. After receiving an initial denial in October 2020, Burrell requested a hearing, which the ALJ conducted in July 2021. The ALJ ultimately issued an opinion denying Burrell's claims in September 2021. (R. 15–25).

At Step 1, the ALJ determined that Burrell was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Burrell suffered from the following severe impairments: depression and anxiety.

At Step 3, the ALJ found that none of Burrell's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Burrell's residual functional capacity.

The ALJ determined that Burrell had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

- Burrell can perform simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work).

- Burrell can make simple work-related decisions.

- Burrell can occasionally interact with co-workers and the public.

- Burrell can occasionally deal with changes in the work setting.

- Burrell can tolerate few changes in a routine work setting, defined as few well explained workplace changes.

- Burrell would be absent one day per month.

At Step 4, the ALJ found that Burrell could not perform her past relevant work. At Step 5, the ALJ determined that Burrell could perform jobs, such as cleaner housekeeper, laundry worker, and fold machine operator, that exist in significant numbers in the national economy and thus Burrell was not disabled under the Social Security Act.

Burrell requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Burrell argues that the ALJ erred in discounting the opinion evidence of Dr. Hodo, an examining psychiatrist. Under the regulations that apply to Burrell's application for benefits, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. 20 CFR § 404.1520c(b)(2). The ALJ may, but need not, explain how she considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 CFR § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 CFR § 404.1520c(c)(2).

1. <u>Dr. Hodo's opinion</u>: In June 2020, Dr. Hodo performed a consultative mental status exam on Burrell. (R. 547–49). According to Dr. Hodo, Burrell seemed "to have some depression in her mood and has had this for some time." (R. 548). Burrell also had memory problems and trouble focusing. (*Id.*). Burrell's "thoughts did not flow well and frequently, when asked questions, she would have to stop and think about it for awhile before she could give an answer." (R. 549). Though Burrell hadn't been hallucinating, Dr. Hodo found "that something was slowing down her thought process." (*Id.*). And while Dr. Hodo determined that Burrell was not suicidal or homicidal, he noted that Burrell "has referential thoughts and those are possibly delusional at times." (*Id.*). So Dr. Hodo diagnosed Burrell with major depression, panic disorder, and possible PTSD. (*Id.*).

A year later, Dr. Hodo filled out a medical source opinion form on Burrell's behalf. (R. 550–51). This formed required Dr. Hodo to circle answers and write short responses to several disability related questions. In filling out this form, Dr. Hodo circled that Burrell had marked limitations in understanding, carrying out, and remembering simple instructions. (R. 550). And Burrell had extreme limitations in understanding, carrying out, and remembering complex instructions. (*Id.*). Burrell also had extreme limitations in responding appropriately to supervision and responding to customary work pressures. (*Id.*). But Burrell had only marked limitations in responding appropriately to co-workers and dealing with changes in a routine work setting. (*Id.*).

Dr. Hodo then found that Burrell had extreme limitations in: (1) responding appropriately to members of the general public; (2) using judgment in simple one or two step work-related decisions; (3) using judgment in detailed or complex work-related decisions; (4) maintaining attention, concentration, or pace for at least two hours; and (5) maintaining activities of daily living. (R. 550–51). And Burrell's estimated

degree of deterioration in personal habits and constriction of interests were marked. (R. 551). According to Dr. Hodo, Burrell's limitations had lasted for more than a year, Burrell's medication helped her ability to function, Burrell's condition would deteriorate if placed under stress of a job, and Burrell could not manage benefits in her best interest. (*Id.*).

The ALJ found Dr. Hodo's opinion not persuasive. (R. 23). The ALJ noted that Dr. Hodo only performed "a one-time evaluation" and found that his opinion "is not consistent with treating records and the claimant's longitudinal history and conservative medication regime." (*Id.*). The ALJ also said that Dr. Hodo's opinion was "not consistent with the claimant's overall self-report of 1-10 scale in treating records, GAF functioning levels reported, and no need for medication increases or changes." (*Id.*). The ALJ finally pointed out that Burrell "takes 50 mg Zoloft only and has no psychological hospitalizations" and concluded that "there is no indication in records on severely reduced activities of daily living." (*Id.*).

2. <u>Analysis</u>: As Burrell correctly points out, the ALJ's hearing decision suggests that the ALJ misunderstood the evidence about Burrell's self-report of 1-10 scale in the treating records. The ALJ believed that on some occasions Burrell rated her mental health symptoms as low as a "1" or "2." (R. 22). But the medical records the ALJ cited showed that Burrell didn't rate her depression or anxiety a "1" or "2" on a 1-10 severity scale. Instead, the goal of Burrell's clinical treatment plan with West Alabama Mental Health Center was that she would rate her depression at "1" and anxiety at "2" by a certain date. (R. 399, 425, 500, 402, 405, 426). Burrell's own rating of her symptoms were generally between a "4" and "8." (R. 398, 403, 404, 406, 407, 486, 506, 519, 556).

The Commissioner concedes that the ALJ misunderstood the notes about Burrell rating her symptoms a 1 or 2 out of 10. But the Commissioner says that this mistake was harmless because (a) the medical records that the ALJ cited to support this finding included no "objective signs of the marked or extreme functional limitations Dr. Hodo

opined," and (b) the ALJ didn't rely solely on the severity rating to discount Dr. Hodo's opinion evidence. (Doc. 12 at 14).

"The Eleventh Circuit has consistently held that mistakes as to weight and credibility constitutes a prejudicial error on the part of the ALJ." *Robinson v. Astrue*, Case No. 3:11-cv-3102-RDP, 2012 WL 4344547, at *8 (N.D. Ala. Sept. 13, 2012). And the court cannot tell from this record what weight the ALJ gave the severity rating when finding Dr. Hodo's opinions inconsistent with the record. To do that would require re-weighing the evidence, which "invades the province of the ALJ." *See Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) (remanding when substantial evidence didn't support ALJ's articulated reasons for discounting medical opinion even though there was evidence in the record that supported ALJ's final decision); *see also McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (rejecting Commissioner's argument that error was harmless when ALJ misunderstood severity of symptoms that GAF score reflected); *Talbot v. Comm'r of Soc. Sec.*, 383 F. App'x 843, 845 (11th Cir. 2010) (finding remand warranted when ALJ misunderstood pain scale severity rating in making credibility determination).

If the court were to speculate, the court would likely find that the ALJ placed a good deal of weight on the low severity ratings because the ALJ **bolded** the sentence that discussed the ALJ's finding that Burrell sometimes rated her mental health symptoms a "1" or "2." (R. 22). And the ALJ's factual error may have made a difference in how persuasive the ALJ found Dr. Hodo's opinion because a correct reading of Burrell's medical records could have affected how the ALJ viewed the consistency factor. So the court will remand this case for the ALJ to reassess Dr. Hodo's opinion evidence with the understanding that Burrell never rated her mental health symptoms a "1" or "2" on the severity scale.

In remanding this case for reconsideration of Dr. Hodo's opinion, the court is not holding that the ALJ must find Dr. Hodo's opinion persuasive. Rather, the court is merely requiring the ALJ to reassess Dr. Hodo's opinion with the knowledge that it was an objective for Burrell to one day

rate her mental health symptoms a "1" or "2," not that Burrell ever rated her symptoms that low.

## IV.  CONCLUSION

For the reasons stated above, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for the ALJ to reassess Dr. Hodo's opinion. The court will enter a separate final order that closes this case.

**Done** on August 7, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE